UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2020 JUN 12 PM 1:06

JAY R. McLAUGHLIN, )
 )
Plaintiff, )
 )
v. ) Case No. 2:19-cv-00112
 )
LANGROCK, SPERRY & WOOL, LLP )
 )
Defendant. )

# OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S SUPPLEMENTAL EXPERT DISCLOSURE AND INCORPORATED MEMORANDUM OF LAW
(Doc. 69)

Plaintiff Jay R. McLaughlin brings this suit against Defendant Langrock, Sperry & Wool, LLP, arising from Defendant's role as an alleged escrow agent in a transaction between Plaintiff and D.E.L. Enterprises, LLC, d/b/a Landel Land Clearing ("Landel"), Defendant's client, for Plaintiff to loan Landel monies and provide construction services in connection with a pipeline construction project. On April 29, 2020, Plaintiff filed a motion to strike Defendant's April 23, 2020 supplemental expert disclosure and the report incorporated therein on the grounds that the disclosure is not timely under Fed. R. Civ. P. 26(a)(2) and that the expressed opinions are not the proper subject of expert testimony. (Doc. 69.)

Defendant filed an opposition on May 13, 2020, in which it contends that it served its supplemental expert disclosure within the time period set forth in Fed. R. Civ. P. 26(a)(3)(B). In addition, Defendant argues that the subject of the supplemental report, the standard of care for breach of fiduciary duty, often requires expert testimony. Plaintiff replied on May 27, 2020, at which time the court took the pending motion under advisement.

Plaintiff is represented by Gregory A. Weimer, Esq., and Lee H. Bals, Esq. Defendant is represented by Christopher D. Ekman, Esq., and James M. Cooley, Esq.

## I. Factual and Procedural Background.

### A. Allegations in the First Amended Complaint ("FAC").

Plaintiff is an individual who resides in Medway, Maine, and who operates a logging, clearing, and construction business. As part of his business, Plaintiff provides financing for construction projects. Defendant is a limited liability law partnership with offices in Burlington and Middlebury, Vermont.

In June of 2013, Plaintiff entered into contract negotiations to provide Landel with logging, clearing, and other construction sitework in connection with a pipeline project in Pennsylvania. On May 31, 2013, Landel had entered into a Master Service Agreement with Access MLP Operating, LLC ("Access") in connection with that project. Defendant, primarily through James Swift, Esq., represented Landel during the negotiations with Access and Plaintiff. In late June or early July, Plaintiff retained Sean Joyce, Esq., of the law firm Joyce & Joyce, LLC, to represent him.

On or about July 2, 2013, Plaintiff and Attorney Joyce participated in a phone call with Mark DeLancey, President of Operations at Landel, and Attorney Swift concerning "the potential business relationship" between Landel and Plaintiff. (Doc. 45 at 2, ¶ 9.) In response to Plaintiff's concerns regarding security for "repayment of monies that were proposed to be loaned by Plaintiff . . . to Landel[,]" *id.* at 3, ¶ 10, and "in an effort to persuade Plaintiff . . . to loan monies to Landel," *id.* at ¶ 11, Plaintiff asserts Attorney Swift proposed drafting an escrow agreement through which Defendant would receive funds directly from Access to be paid to Landel. Attorney Swift allegedly represented that he would "take steps to assure the Access monies would go into a Langrock Sperry account, and that Plaintiff . . . would get an accounting of all monies flowing into that account and would be paid monies he was owed by Landel from that account." *Id.*

The following day, Plaintiff contends Attorney Swift directed his legal assistant to send Attorney Joyce a draft Escrow Agreement, Lending Agreement, Promissory Note, and Vendor Contract Information Form via email. Attorney Joyce proposed several

2

revisions to the Promissory Note and Lending Agreement, including the addition of a provision that would require Plaintiff's written consent before Landel entered into any "factoring" or other financing. *Id.* at 3, ¶ 13.

On July 9, 2013, Landel executed the Promissory Note, pursuant to which Landel promised to pay Plaintiff $600,000 on or before December 1, 2013. Attorney Swift drafted the Promissory Note and witnessed Landel's signature. Landel also executed the Lending Agreement on July 9, 2013, in which Plaintiff agreed to loan Landel $400,000. In accordance with Plaintiff's revisions, the Lending Agreement contained a provision stating: "Lender's [Plaintiff's] written consent must be obtained before Borrower [Landel] enters into any 'factoring' or other financing." *Id.* at 5, ¶ 25.

On or about that same day, Plaintiff alleges that he, Defendant, and Landel entered into a contract styled as an Escrow Agreement. Defendant prepared the agreement, and Attorney Swift executed it on Defendant's behalf. Defendant is referred to therein as the "Escrow Agent." (Doc. 45 at 4, ¶ 18.) Pursuant to the Escrow Agreement, Defendant agreed to pay Plaintiff the money owed under the Lending Agreement and Promissory Note in addition to "all other amounts" that Landel owed Plaintiff. *Id.* at ¶ 19. Plaintiff alleges the signed contract was "not an escrow agreement as a matter of law" because rather than appointing a neutral third party as the escrow agent, it "contemplated payment of monies owed by a third party to the agent of one of the parties to the agreement, and thereafter payment to the other party to the agreement." *Id.* at ¶ 17.

The last document to be signed, the Vendor Contract Information Form ("VCIF"), included the name "Access Midstream" on the upper line as well as the following text:

REMIT TO ADDRESS

Langrock Sperry Wool LLP Trust Account
111 South Pleasant Street
P.O. Drawer 351
Middlebury, VT 05753

*Id.* at 4-5, ¶ 20. Plaintiff asserts that the VCIF was completed in "such a manner to create the impression that Access was being directed to remit monies owed to Landel to [Defendant]." *Id.* at 4, ¶ 20. Defendant allegedly did not provide either the Escrow

Agreement or the VCIF to Access and did not otherwise procure an agreement from Access to pay Defendant funds owed to Landel.

Plaintiff asserts that he agreed to loan Landel funds in reliance on Attorney Swift's representations in the July 2, 2013 phone call; the contents of the Escrow Agreement; and the contents of the VCIF, based on which he believed that Defendant would advise Access that payments owed to Landel should be made to Defendant. Defendant made no payments to Plaintiff from July through October of 2013.

In September of 2013, Landel factored monies due from Access with Capstone Business Funding, LLC ("Capstone") despite the provision of the Lending Agreement requiring Landel to first obtain Plaintiff's written consent. Plaintiff asserts that Attorney Swift was aware of the factoring in mid-September as reflected in a billing invoice dated September 25, 2013, which references Capstone "having made a UCC filing and [A]ttorney Swift having a conference with Mark Delancey about the filing." *Id.* at 6, ¶ 27. Nonetheless, Plaintiff contends Attorney Swift did not advise Plaintiff or Attorney Joyce about the factoring or that the Escrow Agreement "was rendered essentially meaningless[,]" even though Attorney Swift knew that Access would pay Capstone, not Landel, the monies owed under the Escrow Agreement. (Doc. 45 at ¶ 28.) Attorney Swift also did not advise Plaintiff or Attorney Joyce to otherwise attempt to secure the funds owed by Landel.

In anticipation of an expected payment from Access to Landel related to the pipeline project, Attorney Joyce emailed Attorney Swift on November 6, 2013 to confirm that a full payment would be deposited into Defendant's escrow account. Plaintiff alleges Attorney Swift never responded and did not subsequently "take any steps to direct Access to pay monies owed to Landel to [Defendant]." *Id.* at 7, ¶ 31. Pursuant to the factoring agreement between Access and Capstone, Access paid Capstone $486,622.50 on or about November 8, 2013, and continued making payments through January 16, 2014, totaling $625,281.82. Plaintiff asserts Defendant did not take any steps to assure that these payments were made to an account it maintained.

4

Plaintiff alleges Attorney Swift "intentionally and deliberately misl[ed]" Plaintiff and Attorney Joyce that payment from Access to Defendant was forthcoming. *Id.* at ¶ 34. As of the filing of the FAC, Plaintiff asserts Landel has not paid him for his work on the pipeline project, including monies loaned, work performed, and equipment purchased, resulting in an amount due and owing in excess of $1,800,000. Plaintiff also has not been paid any monies by Defendant.

Plaintiff asserts four causes of action against Defendant: (1) breach of fiduciary duty for "failing to take any steps to cause Access to pay monies owed to Landel to [Defendant], and in turn pay Plaintiff" and "fail[ing] to take any steps to advise Plaintiff . . . that its client Landel had factored receivables due from Access," *id.* at 8, ¶¶ 40-41 (Count I); (2) breach of the Escrow Agreement for failing to direct Access to pay Defendant funds owed to Landel, and breach of the Escrow Agreement's implied covenant of good faith and fair dealing for failing to advise Plaintiff that Landel had breached the Lending Agreement by factoring the Access receivables without his consent (Count II); (3) negligent misrepresentation for falsely informing Plaintiff that Defendant would "take steps" to ensure Access deposited money owed to Landel with Defendant, and that Defendant would in turn pay Plaintiff monies owed by Landel, *id.* at 10, ¶ 54 (Count III); and (4) promissory estoppel arising from Attorney Swift's alleged promise to draft an escrow agreement under which it would ensure Access paid Landel through Defendant's escrow account (Count IV). Plaintiff seeks a "judgment according to proof" and punitive damages as well as attorney's fees and costs. *Id.* at 8, 10-12.

**B.     Procedural History.**

On September 26, 2019, the court entered a Stipulated Discovery Schedule and Order setting deadlines of March 15, 2020 for Defendant to submit expert witness reports; April 15, 2020 to take expert depositions; and April 23, 2020 to complete discovery. The court granted Defendant an extension of the expert disclosure deadline until March 23, 2020 due to Defendant's counsel's illness. On March 23, 2020, Defendant served on Plaintiff its expert disclosures identifying attorney John A. Facey, III, Esq., as its expert witness and attaching Attorney Facey's expert witness opinion.

5

In his March 23, 2020 report, Attorney Facey addressed whether "Attorney Swift owed a duty of care to Plaintiff . . . , a non-client, and, if so whether he breached any such duty." (Doc. 69-2 at 3.) He opined that no agreement had been formed between Plaintiff and Defendant because Plaintiff never assented to or delivered a signed copy of the Escrow Agreement to Defendant. As Plaintiff was neither Defendant's client nor the intended third-party beneficiary of its relationship with Landel, Attorney Facey opined that Defendant owed no duties to Plaintiff. Even if the Escrow Agreement constituted a binding contract, Attorney Facey determined it did not create any escrow or fiduciary obligations because it "did not contemplate a contingency on which [Defendant] would deliver the funds in question[,]" *Id.* at 3, ¶ 2, and Access never in fact delivered any funds. As a result, Attorney Facey concluded Attorney Swift owed obligations only to Landel, not Plaintiff, under the Escrow Agreement.

Attorney Facey also analyzed the terms of the Escrow Agreement, finding that it did not obligate Defendant to notify Access of the Escrow Agreement or payment arrangement, to take any action to confirm that Access was agreeable to the proposed payment arrangement set forth in the VCIF, or to take steps to ensure that Access made payments to Defendant. According to Attorney Facey, the Escrow Agreement only required Landel to notify Access of the proposed payment arrangement, and Access's successor confirmed it received the VCIF setting forth the payment arrangement on or before July 8, 2013. Attorney Facey further explained that Attorney Joyce owed Plaintiff certain duties, described the nature of those duties, and opined that Attorney Joyce should have taken steps to secure the payment of monies owed to Plaintiff and to ensure Access was aware of the financial arrangement between Plaintiff and Landel.

On April 15, 2020, Plaintiff took Attorney Facey's deposition via Zoom. The deposition lasted approximately one hour and forty-five minutes. According to Defendant, Plaintiff did not "explore the nature of Attorney Facey's opinions," but instead asked questions "to seek exclusion of [Attorney] Facey's testimony." (Doc. 75 at 2.) During the deposition, Plaintiff's counsel asked Attorney Facey if he had an opinion about whether Attorney Swift was obligated to advise Plaintiff that Landel had secured

factor financing; however, Plaintiff's counsel did not ask Attorney Facey for the substance of that opinion. Defendant's counsel later asked Attorney Facey whether Attorney Swift "owed a duty to [Plaintiff] to advise him of known factoring." (Doc. 75-1 at 3.) Although Defendant provided the court with an excerpt of Attorney Facey's deposition setting forth this question, Defendant does not include Attorney Facey's answer.

On April 23, 2020, one month after the expert witness disclosure deadline and eight days after Attorney Facey's deposition, Defendant served on Plaintiff a supplemental expert disclosure and report. In the supplemental report, Attorney Facey opined that, assuming *arguendo* the formation of an escrow agreement, Attorney Swift did not breach the standard of care applicable to Vermont escrow agents in 2013 and 2014, which was "to receive and hold money placed in escrow and release it upon satisfaction of the condition identified in the escrow instructions and otherwise comply [with] the escrow instructions." (Doc. 69-3 at 2, ¶ 2.) According to Attorney Facey, the standard of care for escrow agents in Vermont at that time did not include "taking steps to ensure that the party from whom payment would come was aware of the escrow arrangement and willing to make payment to escrow[,] . . . taking steps to ensure that payment was made into escrow[,] . . . monitoring the performance of the parties' obligations under related lending agreements[,] or providing notice of the debtor's performance under the lending agreement." *Id.* As a result, Attorney Facey concluded the standard of care for escrow agents did not require Attorney Swift to notify Access of the payment arrangement between Plaintiff and Landel, to take steps to ensure that Access made payments to escrow, or to secure payment from Landel to Plaintiff.

Assuming Attorney Swift was aware of Landel's factoring with Capstone, Attorney Facey further opined that the standard of care for escrow agents did not require Attorney Swift to monitor Landel's performance under the Lending Agreement and Promissory Note or to advise Plaintiff and Attorney Joyce that Landel obtained financing from a factoring company. In a footnote, Attorney Facey explained that "under a factoring arrangement, the factoring party is paid the remainder of the invoice payment

7

after the factoring company takes its fee." *Id.* at 3 n.1. Citing to a December 6, 2013 Purchase and Sale Agreement, he opined Capstone was providing financing to Landel under an agreement that Landel would be paid the remainder of the money received from Access as a rebate after Capstone deducted its fee. For this reason, he opined that "evidence of factoring is not proof that Plaintiff would not be paid." *Id.*

At the parties' request, the court extended the fact witness deposition deadline to June 5, 2020, and the dispositive motions deadline to June 17, 2020, because of newly produced discovery related to Capstone and the need to re-depose Plaintiff. The trial-ready date is June 23, 2020.

## II. Conclusions of Law and Analysis.

### A. Whether Defendant's Supplemental Expert Witness Disclosure Was Timely.

Plaintiff contends that Defendant's supplemental expert disclosure is untimely because it was not filed prior to the expert witness disclosure deadline and Defendant did not seek leave from the court to supplement its disclosures. In addition, Plaintiff argues that Attorney Facey's supplemental report impermissibly offers new opinions. On these grounds, Plaintiff asks the court to strike Attorney Facey's supplemental report as a sanction under Fed. R. Civ. P. 37(c)(1).

Pursuant to Rule 26(e)(1)(A), a party must "supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect [its] disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" For experts, this duty "extends both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2). Any additions or changes to expert disclosures must be made "by the time the party's pretrial disclosures under Rule 26(a)(3) are due[,]" *id.*, which is "at least [thirty] days before trial" unless "the court orders otherwise[.]" Fed. R. Civ. P. 26(a)(3)(B).

Although experts must supplement their reports if incorrect or incomplete, they "are not free to continually bolster, strengthen, or improve their reports by endlessly

8

researching the issues they already opined upon, or to continually supplement their opinions." *Cedar Petrochems., Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011) (citation omitted). Supplementation under Rule 26(e) is thus generally only appropriate when the expert learns of information that was not previously made known or available to him or her. *See Speedfit LLC v. Woodway USA, Inc.*, 2019 WL 1429609, at *3 (E.D.N.Y. Mar. 28, 2019) ("[Rule] 26(e) does not grant a license to supplement a previously filed expert report because a party wants to, but instead imposes an obligation to supplement the report when a party discovers the information it has disclosed is incomplete or incorrect[.]") (citation and quotation marks omitted); *see also Allen v. Dairy Farmers of Am., Inc.*, 2014 WL 2040133, at *5 (D. Vt. May 16, 2014) ("[A] [p]laintiff's duty to supplement its initial expert report does not arise when plaintiff seeks to bolster its earlier submission, but rather, arises only if the expert *subsequently* learns of information that was previously unknown or unavailable, that renders information previously provided in an initial report inaccurate or misleading because it was incomplete[.]") (emphasis in original) (citation omitted).

Defendant timely served Attorney Facey's expert report on Plaintiff by the court-ordered deadline of March 23, 2020. Defendant's supplementation was not timely, and no further extension for it was sought. Although Defendant maintains it offers Attorney Facey's supplemental report to clarify his deposition testimony, supplementation was not required to correct or complete the record, nor was it based on any information that was "previously unknown or unavailable" to Attorney Facey. *Allen*, 2014 WL 2040133, at *5 (citation omitted). Instead, Defendant's supplementation contains previously undisclosed opinions on new subject matters. Defendant's initial expert witness disclosure only indirectly addressed the applicable standard of care for escrow agents. Defendant's supplemental disclosure seeks to rectify that deficiency and offers new opinions that could and should have been disclosed previously. It therefore is "not an appropriate supplemental report under Rule 26." *Id.* (citation omitted); *see also id.* at *6 (finding expert's supplemental disclosure regarding damages calculations was "not permissible" because it "was not based on information previously unknown or unavailable" to the

9

expert). This conclusion is not altered by Defendant's suggestion that Plaintiff could and should have asked Attorney Facey questions about the applicable standard of care in his deposition. Such an inquiry would have been outside the scope of Defendant's expert witness disclosure, and a party has no obligation to ferret out any other opinions an expert witness may have. *See Venetsky v. United States*, 2019 WL 1768967, at *16 (S.D.N.Y. Mar. 31, 2019) (excluding from consideration on summary judgment expert opinions offered "only at [the expert's] deposition" as "outside the scope of the opinions included in his expert report"); *Griffin v. Lincare, Inc.*, 2016 WL 3945183, at *4 (D. Vt. July 19, 2016) (excluding expert deposition testimony offering opinions that "were not disclosed and therefore cannot be considered"). Having concluded that Defendant's supplementation was untimely and improper, the court turns to whether striking it is the appropriate sanction.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). To determine whether exclusion of an expert witness report is an appropriate sanction, the court considers the *Outley* factors:

> (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (citing *Outley v. City of New York*, 837 F.2d 587, 590-91 (2d Cir. 1988)). "Because the text of the rule requires only that the district court's orders be just, however, and because the district court has wide discretion in imposing sanctions under Rule 37, these factors are not exclusive, and they need not each be resolved" against Defendant for the court to exclude Attorney Facey's supplemental report. *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (internal quotation marks omitted) (quoting *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)).

10

Here, Defendant supplemented its expert witness disclosure eight days after Attorney Facey's deposition, approximately one month after the expiration of the expert witness disclosure deadline, and over thirty days before the case was deemed trial ready pursuant to the court's scheduling order. The delay in question was therefore relatively minimal. *See World Wide Polymers, Inc.*, 694 F.3d at 160 (holding that the filing of an expert report seven weeks after the court-imposed deadline is "not a transgression warranting the striking of plaintiff's expert report" when the party making the late filing "did not seek an unfair advantage over [its] adversary in the litigation"). On the other hand, Defendant offers virtually no explanation for its untimely and inappropriate supplementation and instead suggests any fault lies with Plaintiff.[1] On balance, the first *Outley* factor weighs slightly in favor of exclusion.

The second *Outley* factor, the importance of the expert, is in equipoise. In many cases, the striking of an expert witness report is often case dispositive; however, in this case, Defendant concedes that Attorney Facey's opinion is only offered "in the [u]nlikely [e]vent the [c]ourt [h]olds [t]hat Attorney Swift's [o]bligations [a]re [n]ot [a] [q]uestion of [l]aw[.]" (Doc. 75 at 7.)

"The third *Outley* factor is the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony." *Softel, Inc.*, 118 F.3d at 962. Attorney Facey's supplemental report is only two pages and confined to whether Attorney Swift breached the standard of care owed by escrow agents in Vermont. In tacit recognition of the potential prejudice, Defendant offered to make Attorney Facey available for a deposition before Plaintiff filed the pending motion and prior to the dispositive motions deadline. No trial date has been set, and any prejudice Plaintiff will suffer by having to confront new opinions can be rectified by an opportunity to re-depose Attorney Facey at Defendant's expense. *See Browe v. CTC Corp.*, 2017 WL 5992333, at *5 (D. Vt. Dec. 1,

---

[1] *See* Doc. 75 at 4 ("Plaintiff's counsel seized on this use of the term [duty] in an effort to gain [a] tactical advantage in this case. Defendant's supplemental disclosure is meant, in part, to protect against this effort and to make clear [Attorney] Facey's opinions. Under the circumstances, Defendant's supplementation is not even subject to Rule 37.").

11

2017) ("Prejudice from the introduction of an untimely expert witness report is commonly addressed by allowing the other party an opportunity to depose the expert."); *Lab Crafters, Inc. v. Flow Safe, Inc.*, 2007 WL 7034303, at *8 (E.D.N.Y. Oct. 26, 2007) ("Courts to address this issue have stated that any prejudice to the opposing party can be alleviated by allowing them to depose the expert prior to trial."). It nonetheless remains true that Plaintiff will be "forced, at a very late date in the discovery process, to accommodate potentially significant shifts" in Defendant's defense. *Softel, Inc.*, 118 F.3d at 962 (holding third *Outley* factor favored exclusion of untimely expert report offered by plaintiff where "the excluded testimony *was* expert testimony" and any differences between the parties' expert opinions "would have redrawn the boundaries of the case and almost certainly have prejudiced [the defendant's] ability to meet [the plaintiff's] attack") (emphasis in original). The third *Outley* factor is thus again in equipoise.

Under the fourth *Outley* factor, the court considers the possibility of a continuance. The dispositive motions deadline is June 17, 2020. Plaintiff filed his Complaint approximately one year ago, and the court has recently extended several discovery deadlines at the parties' joint request, including their most recent request for an extension of the fact witness deposition deadline to June 5, 2020. A continuance of the dispositive motions deadline with an opportunity to re-depose Attorney Facey thus remains feasible and would ameliorate any prejudice. Because a continuance is readily available, the fourth *Outley* factor weighs against exclusion.

Viewed collectively, the *Outley* factors do not support the harsh sanction of the exclusion of Attorney Facey's April 23, 2020 supplemental expert witness report. *See World Wide Polymers, Inc.*, 694 F.3d at 159-60 (holding that court erred in failing to consider lesser sanctions in "met[ing] out . . . one of the most severe sanctions possible" by striking expert report filed seven weeks after court-ordered deadline). However, because the supplementation was untimely and made without good cause, some form of fee-shifting is warranted. *See* Fed. R. Civ. P. 37(c)(1)(A) (stating in addition to or instead of exclusion, the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure").

12

The court therefore DENIES Plaintiff's motion to strike Attorney Facey's April 23, 2020 supplemental expert witness report and ORDERS Defendant to pay Plaintiff's reasonable expenses, including attorney's fees, caused by the untimely disclosure, consisting of the cost of filing the motion to strike and the cost for the preparation and taking of Attorney Facey's second deposition. *See Browe*, 2017 WL 5992333, at *6 (conditionally denying motion to exclude expert testimony and ordering defendants to pay costs of plaintiffs' preparation for and taking of expert's deposition).

### B. Whether the Opinions Proffered in Attorney Facey's Supplemental Expert Witness Report Are the Appropriate Subject of Expert Testimony.

As an alternative ground for striking Attorney Facey's supplemental expert witness report, Plaintiff contends Attorney Facey improperly opines on questions of law regarding the standard of care Attorney Swift owed to Plaintiff and whether Attorney Swift breached that standard.[2]

Fed. R. Evid. 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." However, expert testimony that states a legal conclusion or "communicat[es] a legal standard—explicit or implicit—to the jury" is inadmissible. *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992); *see also DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005) ("[Expert witness] statements embodying legal conclusions exceed[] the permissible scope of opinion testimony under the Federal Rules of Evidence.") (alterations in original) (quoting *United States v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988)); *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir.

---

[2] Plaintiff also contests the contents of Attorney Facey's March 23, 2020 opinion, arguing Attorney Facey's conclusion that no agreement was formed between Plaintiff and Defendant is an inadmissible interpretation of Defendant's legal obligations under the Escrow Agreement. The court agrees. *See Densberger v. United Techs. Corp.*, 297 F.3d 66, 74 (2d Cir. 2002) ("It is a well-established rule in this Circuit that experts are not permitted to present testimony in the form of legal conclusions.") (citation and quotation marks omitted); *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 508 (2d Cir. 1977) (holding expert was not permitted "to give his opinion as to the legal obligations of the parties under the contract").

1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.").

In general, an escrow agent has "a fiduciary duty to an individual that deposits funds in escrow to act in strict compliance with the terms of the escrow agreement and to disclose known fraud." *Qureshi v. People's United Bank*, 2020 WL 2079922, at *16 (D. Vt. Apr. 30, 2020); *see also Powell v. H.E.F. P'ship*, 793 F. Supp. 91, 93 (D. Vt. 1992) (holding escrow agent has a duty not only to strictly enforce escrow instructions but also to "disclose information about a known fraud being committed on the principal"). Under Vermont law, "[t]he existence of a duty is primarily a question of law"; that is, the "court determines whether a duty is owed, as well as the scope of any duty that is owed." *Buxton v. Springfield Lodge No. 679, Loyal Order of Moose, Inc.*, 2014 VT 52, ¶ 7, 196 Vt. 486, 490, 99 A.3d 171, 174 (citation and internal quotation marks omitted); *see also Ascension Tech. Corp. v. McDonald Invs., Inc.*, 327 F. Supp. 2d 271, 276 (D. Vt. 2003) ("Whether or not a fiduciary duty exists between parties is a question of law.") (citing *McGee v. Vt. Fed. Bank, FSB*, 726 A.2d 42, 44 (Vt. 1999)).

Expert testimony on the standard of care is often required where the issue is a "matter of judgment unique to [a] profession[.]" *Estate of Fleming v. Nicholson*, 724 A.2d 1026, 1028 (Vt. 1998) (discussing legal malpractice claim). For example, in *Schwarzkopf v. Secor*, Dkt. No. 256-9-18-Bncv (Vt. Sup. Ct. Feb. 28, 2020), the Vermont Superior Court held that expert testimony was necessary to establish whether engineers breached a fiduciary duty owed to plaintiffs whose claims were premised on "the manner in which [the engineers] carried out their work under the contract[,]" which "required [the engineers] to exercise their professional judgment in the manner in which they performed their work and oversaw the project." *Id.* at *9 ("Much like a professional negligence action, breach of fiduciary duty claims require expert testimony."); *see also Oliver v. Ingber*, 1998 WL 107299, at *3 (E.D. Pa. Mar. 9, 1998) (holding that expert testimony was required to establish the applicable standard of care owed by defendant attorneys to a non-client plaintiff pursuant to an escrow agreement because "[t]he factual issues" relating to what standard was owed "were not simple and straightforward").

14

Because Plaintiff's breach of fiduciary duty claim is based at least in part on Attorney Swift's professional judgment with regard to his responsibilities under the Escrow Agreement, it is possible that some of Attorney Facey's opinions may fall within the scope of permissible expert witness testimony. *See, e.g.*, *Pleasant Valley Biofuels, LLC v. Sanchez-Medina*, 2014 WL 11881019, at *5 (S.D. Fla. Nov. 21, 2014) (relying on expert testimony regarding "escrow agent's duty of care" and denying judgment as a matter of law on claim of gross negligence arising from failure to comply with escrow agreement obligations). Striking the entirety of Attorney Facey's April 23, 2020 supplemental expert witness report is not warranted at this time.

For the reasons stated above, the court GRANTS IN PART Plaintiff's motion to strike the supplemental expert witness report insofar as it offers conclusions of law and DENIES IT WITHOUT PREJUDICE to the extent it addresses the applicable standard of care.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART WITHOUT PREJUDICE Plaintiff's motion to strike Defendant's supplemental expert witness disclosure and memorandum incorporated therein. (Doc. 69.) The court further ORDERS Defendant to pay Plaintiff's reasonable expenses, including reasonable attorney's fees, caused by Defendant's untimely disclosure, consisting of the cost of filing the motion to strike and, should Plaintiff choose to re-depose Attorney Facey, the cost for the preparation and taking of that deposition. In the event that either party petitions the court for an extension of the deadline for dispositive motions, a reasonable extension shall be granted.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 12th day of June, 2020.

Christina Reiss, District Judge
United States District Court